IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00022-D

**Darrell Keith Williams,**

Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

Defendant.

**Memorandum & Recommendation**

Plaintiff Darrell Keith Williams instituted this action on February 11, 2015, to challenge the denial of his application for social security income. Williams claims that Administrative Law Judge Catherine Harper erred by finding that he had the residual functional capacity ("RFC") to perform medium work. He also contends that ALJ Harper improperly assessed his credibility. Both Williams and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 25-1, 26

After reviewing the parties' arguments, the court has determined that ALJ Harper reached the appropriate decision. There is substantial evidence to support ALJ Harper's conclusion that Williams can perform medium work and Williams has failed to demonstrate any error in the credibility determination. Therefore, the undersigned magistrate judge recommends[1] that Williams's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

# I.    Background

Williams filed a previous application for supplemental security income on March 29, 2010. Tr. 207–220. The application was denied. *Id.* Thereafter, the Appeals Council remanded the matter for further evaluation of Williams's mental impairments, a determination of whether Williams was disabled with drug and alcohol addiction, and a determination of whether substance abuse was a contributing factor material to the finding of disability. After amending his alleged onset date to June 30, 2011, Williams appeared before ALJ Harper for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Harper determined that Williams was not entitled to benefits because he was not disabled.  Tr. at 56–65.

ALJ Harper found that Williams had the following severe impairments: lumbar degenerative disc disease and a mental impairment variously assessed as depression or personality disorder. *Id.* at 58. ALJ Harper also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Harper determined that Williams had the RFC to perform medium work with additional limitations: he should never climb ropes, ladders, or scaffolds; he can occasionally climb ramps and stairs and stoop; he can do frequent balancing, climbing, crouching, crawling, and kneeling; he should avoid concentrated exposure to unprotected heights; he is limited to simple, routine, repetitive tasks in a low-stress job, defined as one having only occasional changes in the work setting; and he can have occasional interaction with the public and coworkers. *Id.* at 60. ALJ Harper also concluded that Williams had no past relevant work but that considering his age, education, work experience, and RFC there were other jobs that existed in the national economy that he was capable of performing. *Id.* at 64. These jobs included: dining room attendant, food service

worker, and laundry worker. *Id.* at 65. Thus, ALJ Harper found that Williams was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Williams commenced this action on February 11, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals the Commissioner's final decision, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

3

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Williams alleges that he suffers from back pain, diabetes, and depression. However, his Motion for Judgment on the Pleadings focuses solely on the mental health and pain-related issues. D.E. 25-1 at 9–10. Therefore, the court will review the medical history related to these conditions.

### 1. Mental Health Treatment

In April 2010, Williams had a consultative psychological examination with Dr. Gary Bachara. Tr. at 546–48. Dr. Bachara estimated Williams's intelligence is in the low average range and diagnosed him to be malingering and noncompliant with testing. *Id.* at 548. Dr. Bachara also determined that Williams had a personality disorder. *Id.* at. 547–48. He assigned Williams a Global Assessment of Functioning ("GAF")[2] score of 65. *Id.* Dr. Bachara opined that

---

[2] A GAF score measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). Selected GAF scores have the following meanings:

> 70–61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.

Williams could understand, retain, and follow instructions and perform simple, repetitive tasks. *Id.* at 548. He further opined that Williams could not get along well with other people. *Id.*

Williams began treatment with psychiatrist Dr. Kimberly Johnson on January 16, 2012. *Id.* at 804–07. He noted sadness, difficulty sleeping, difficulty concentrating, and memory problems. *Id.* Dr. Johnson assigned a GAF score of 60 and diagnosed Williams with major depressive disorder. *Id.* She prescribed Wellbutrin. *Id.* Williams returned in February complaining of increased irritability and nightmares, and Dr. Johnson prescribed additional medication. *Id.* at 881–82. She assigned a GAF score of 65. *Id.*

In April 2012, Williams reported to Dr. Johnson that he felt sad and had suicidal thoughts. *Id.* at 814–16. Williams saw Dr. Johnson in June 2012 complaining of mood swings, isolating himself, increased anger, and racing thoughts. *Id.* at 817–19. Dr. Johnson prescribed additional medication. *Id.*

In July 2013, Williams reported to Dr. Johnson that he was doing well. *Id.* at 821. A mental status exam was normal. *Id.* In August 2013, Williams returned to Dr. Johnson, who noted partial treatment response but continuing depressive symptoms. *Id.* at 965, 968–69. His mental status exam was normal, and medications were continued. *Id.* Williams reported problems with focus and social anxiety in October 2013, and he was again directed to continue his medication. *Id.* at 970–73. In November 2013, he reported that his back pain was controlled with medication. *Id.* at 975.

---

60–51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

DSM–IV–TR 34

## 2. Pain-Related Medical Care

Williams saw Dr. Divya Patel of Carolina Regional Orthopedics on January 13, 2012. *Id.* at 884–86. Williams reported back and right shoulder pain. *Id.* Dr. Patel's examination indicated trigger point tenderness and spasms. She modified Williams's medication and gave him an injection. *Id.*

Dr. Patel saw Williams again in April 2012 for pain in his back, hands, and feet, which he described as stabbing and aching. *Id.* at 873–74. She continued him on his existing medication regimen. *Id.*

Williams followed-up with Dr. Patel for pain management in May 2012 and he reported numbness in his upper extremities, which resulted in weakness and dropping items. *Id.* at 871–72. An electromyogram ("EMG")[3] showed evidence of mixed sensory and motor axon loss type peripheral polyneuropathy. *Id.* at 867–68. Williams's medications were continued. *Id.*

Williams returned to Dr. Patel later that month and he reported back pain. *Id.* at 865–66, 901. Dr. Patel informed Williams that an MRI showed broad based central and posterolateral bulging. Medications were continued. *Id.* A September 2012 MRI of the lumbar spine showed disc herniation at L3-4 and L4-5. *Id.* at 900. At an October 2012 visit, Dr. Patel administered an injection because Williams continued to complain of pain. *Id.* at 952–61. He received another injection the following month because he continued to complain of pain. *Id.* However, there were no changes in his medications. *Id.* Williams continued to complain about pain in December 2012 and January and February 2013. *Id.* He received injections each month. *Id.* He complained again of pain and tenderness in March 2013, and Dr. Patel administered another injection in April

---

[3] Electromyography is a diagnostic technique used to measure the action potentials and evoked potentials of skeletal muscles in various states, which translates to assessing the functional status of muscles and the nerves controlling those muscles based on their electrical activity. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 260 n.14 (N.D.N.Y 2009).

2013. *Id.* at 948–51. He continued to complain of pain, and his pain medication and injections were continued. *Id.* at 981–85. A June 2013 follow-up examination with Dr. Patel's office revealed trigger point tenderness in the lower lumbar region, for which Williams was given injections and continued on medication. *Id.* at 941–43.

With respect to his leg pain, Williams saw physicians' assistant Savannah Bean on June 2, 2011, and reported tingling and burning in his legs and feet. *Id.* at 687–88. He was prescribed medication and referred to an orthopedist for a consultation. *Id.* At an eye examination that month, Williams was diagnosed with hypertensive retinopathy. *Id.* at 677–83. At an orthopedic consultation later that month, Dr. David Miller examined Williams, who complained of back pain and occasional leg pain. *Id.* at 691–93. Examination revealed pain with range of motion and limited flexation and extension. *Id.* X-rays showed scoliotic curvature in the mid-thoracic spine and a healed compression fracture. *Id.* Medication and physical therapy were recommended. *Id.*

Williams attended physical therapy for approximately one month with some improvement. *Id.* at 761. An August 1, 2011 MRI showed moderate degenerative disc disease at L3-4 and L4-5. *Id.* at 697–98. He received an epidural steroid injection later that month. *Id.* at 697–98, 781–82.

### D. Residual functional capacity

Williams asserts that ALJ Harper's finding that he can perform a reduced range of medium work is unsupported by the record. The Commissioner maintains that there is substantial evidence to support a conclusion that Williams is capable of both the physical demands and the mental demands of a reduced range of medium work. The court finds that substantial evidence supports ALJ Harper's RFC determination.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96–8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

Williams contends that his impairments prevent him from meeting the demands of unskilled work. He notes that the medical record documents his continued back pain, for which he sought pain management from Dr. Patel. He also asserts that ALJ Harper erred in stating that he took no medication for his mental health, noting that Dr. Johnson prescribed both anti-depressants and anti-psychotic medication. He maintains that ALJ Harper erred in giving great weight to the opinion of Dr. Bachara, which predated the amended onset date. He further alleges

that the opinions of state agency consultants are flawed because they did not have the benefit of Dr. Johnson's records when formulating their opinions.

Substantial evidence supports ALJ Harper's RFC finding. With respect to his physical impairments, the evidence demonstrates that while Williams continued to complain of back pain and had limited range of motion, he also displayed good strength and normal gait. Tr. at 692, 780, 794–95, 868, 872, 874–75, 882, 894. Moreover, he reported that his pain was manageable with medication. *Id.* at 975, 977. Accordingly, it cannot be considered disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling").

Nor do Williams's mental limitations preclude a finding that he can perform the mental demands of unskilled work. Although Dr. Bachara's evaluation predates the amended onset date, his findings are consistent with other evidence. Dr. Bachara found that Williams could understand, retain, and follow instructions; that he could perform simple, repetitive tasks; and that his GAF score was 65. Tr. at 546–48. State agency consultant Dr. Tovah Wax similarly found that Williams could perform simple, routine, repetitive tasks with some social limitation. *Id.* at 199–200. These opinions are consistent with Dr. Johnson's subsequent findings that Williams's depression responded well to medication. *Id.* at 804–21. Apart from an initial GAF score of 60, which indicates moderate symptoms, Dr. Johnson assigned Williams GAF scores of 65–70, indicative of only mild limitation. *Id.* at 806, 809, 812, 815, 818, 821, 968. Moreover, her treatment notes reflect normal mental status examinations and, while his mood was occasionally sad, at other times it was normal. *Id.* at 806, 809, 811, 815, 818, 821.

Contrary to Williams's assertion, ALJ Harper did not state that Williams was not prescribed mental health medications during the relevant time period. Rather, she noted that

there were times both before and during the relevant time period that Williams was not prescribed medication for his mental health conditions. Tr. at 62–63. Further, while Dr. Johnson prescribed Williams an anti-psychotic medication, it was to control his moods, as she stated he had no indication of psychotic process. *Id.* at 809, 812, 815, 818, 820.

Williams contends that his inability to cope with routine workplace changes and stresses precludes his from work activity. However, these limitations are self-reported and were not assessed by Dr. Johnson or any other mental health professional. As noted above, Dr. Wax found that Williams could perform simple, routine, repetitive tasks with some social limitation.

Thus, although Williams has diagnoses including degenerative disc disease and depression, he has failed to carry his burden of demonstrating related functional loss. *See Gross*, 785 F.2d at 1166 (holding that the diagnosis of a condition, alone, is insufficient to prove disability, because there must also be "a showing of related functional loss"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... says nothing about the severity of the condition."). As ALJ Harper observed, Williams's pain responded well to treatment with medication and injections, his mental examinations were normal, with GAF scores indicative of only mild symptomology, and one provider opined that he was malingering. These findings, combined with the medical opinions in the record, constitute substantial evidence that Williams is capable of a reduced range of medium work.

### E.    Credibility

Williams's next assertion is that ALJ Harper erred in assessing his credibility. He argues that ALJ Harper erred in rejecting his statements concerning his symptoms and resulting limitations. The Commissioner asserts that ALJ Harper properly evaluated Williams's credibility.

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R.96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96–7p, 1996 WL 374186, at *2.

Here, ALJ Harper noted that while his medically determinable impairments could reasonably be expected to cause the symptoms alleged, Williams was not fully credible regarding the intensity, persistence, and limiting effects of his symptoms. Tr. at 63. ALJ Harper went on to explain her finding. *Id.*; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (holding

that when an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding). She noted that the evidence of record showed that: Williams had been poorly compliant with recommended treatment; in April 2010 he did not have a doctor and was not taking any medication; Williams admitted that his neck pain resolved after he received steroid injections; in July 2012 he had no signs of depression; in May and June 2013 Williams admitted that his back pain was improved, being only 5/10 in severity when he took his medication, and he was taking no medication for depression. Tr. at 63. ALJ Harper also noted that Williams displayed no difficulty getting in and out of his chair or ambulating during the hearing. *Id.* at 64–65.

Williams contends that ALJ Harper erred by failing to credit his statements of pain. He argues that his pain is so intense that he is unable to complete a normal workday. Williams asserts that his subjective statements of pain are borne out by the record showing chronic low back pain which impeded his abilities to sit, stand, and walk. He also maintains that ALJ Harper misapplied case law by requiring Williams to support his pain allegations with objective evidence.

Williams misconstrues ALJ Harper's credibility determination. An ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96–7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10–CV–263–FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (finding the ALJ properly considered the entire case record to

determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, ALJ Harper did not require objective evidence of Williams's pain allegations in order to find them credible. She did, however, remark that Williams's statements were inconsistent with the evidence in the record. Tr. at 63–64. In addition to the evidence cited by ALJ Harper, the objective evidence of record also showed that: Williams had normal mental status examinations, intact memory and cognitive functioning, and no signs of depression (*id.* 56, 546–48); he only had mild to moderate degenerative changes in the lumbar spine (*id.* at 61–62); and he had good strength and no gait disturbances (*id.* at 691–92, 697–98 780, 866, 868, 872, 874–75, 882, 962). Additionally, there were several instances in the record remarking that Williams was not compliant with recommended treatments (*id.* at 63–64, 547, 642, 679, 799, 814–15, 865, 977) and Dr. Bachara opined that Williams was malingering (*id.* at 63, 547). Finally, evidence also demonstrated that Williams responded well to treatment. *Id.* at 63, 809, 862, 868, 882.

In sum, the evidence undermines Williams's assertion that his impairments are disabling. *See Green v. Astrue*, No. 3:10–CV–764, 2011 WL 5593148, at *4 (E.D. Va. Oct. 11, 2011) ("An individual does not have to be pain-free in order to be found 'not disabled.'") (citing *Hays v. Sullivan*, 907 F.2d 1453, 1457–58 (4th Cir. 1990)), *adopted by* 2011 WL 5599421 (E.D. Va. Nov. 17, 2011). An ALJ may properly consider such evidence when making a credibility determination. S.S.R. 96–7.

Williams essentially asks the court to reconsider the testimonial and objective medical evidence and give controlling weight to his testimony. It is not within the province of the court to reweigh the evidence, even if the court might reach a different result, where the ALJ has

considered and analyzed all the relevant evidence and his decision is supported by substantial evidence, as is the case here. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig*, 76 F.3d at 589). The ALJ indicated she considered the entire record, including Williams's symptoms, the objective medical evidence, and other evidence, as well as opinion evidence in formulating the RFC. Tr. at 58–60; *see Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word.") (citation omitted). Where, as here, an ALJ's credibility findings which are supported by specific reasons, the court is required to defer to those determinations. *See Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) ("When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'") (internal citations omitted). Inasmuch as Williams has failed to demonstrate any error in ALJ Harper's credibility assessment, he is not entitled to relief on this issue.

## III.     Conclusion

For the foregoing reasons, the court recommends that Williams's Motion for Judgment on the Pleadings (D.E. 25-1) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 26) be granted, and that the Commissioner's final decision should be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject,

or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: February 4, 2016.

_Robert T. Numbers II_

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE